## THE HARRISBURG.
### THE P. R. R. NO. 510.
### HURLEY v. PENNSYLVANIA R. CO.
### No. A-10947.

District Court, E. D. New York.
July 7, 1930.

Single & Single, of New York City (Wm. J. Mahar, of New York City, of counsel), for libelant.

Burlingham, Veeder, Fearey, Clark & Hupper, of New York City (Paul Tison, of New York City, of counsel), for claimant-respondent.

GALSTON, District Judge.

On November 28, 1927, libelant's stone scow Margaret H, loaded with crushed rock, consigned to bulkhead at old Pier 5, North River, city of New York, arrived alongside and made fast to Thompson's digger, bow first, with two lines to the digger. Her stern line was attached by the captain to car float P. R. R. No. 510. By the afternoon of November 30th she was unloaded and lay light.

The controversy arises as to what was done thereafter. Her captain testified that between 6:15 and 6:30 p. m., a Pennsylvania

Railroad Company tug came up and towed out P. R. R. No. 510, some one on the car float throwing his stern line off. At the time the captain was in the bow and called protestingly to the car float and tug, but got no response. He could not get to the digger nor to the Eleanor Donovan, which was near the cribbing. He could not get ashore because of the cribbing. At about 1 a. m. he was driven against the rocks; his boat listed and sustained some damage and was not taken off until 11 o'clock the next morning. His story as to his lines is corroborated by the witness Timothy J. Donovan, manager of libelant's boats.

As against this testimony, the captain of the Pennsylvania tug No. 5 testified that he saw no scow or barge in the vicinity of P. R. R. No. 510 and saw no line from the P. R. R. No. 510 to a barge. He is corroborated by the testimony of Whalen, a deck hand floatman.

Thus it becomes necessary to weigh this diametrically opposed evidence. However, the rule placing the greater weight on affirmative evidence must be followed, and accordingly I find that the Margaret H had a line out to the P. R. R. No. 510, and that it was wrongfully cast from the car float by some one employed by the respondent, thus leaving the Margaret H in a condition of peril.

Respondent cites The Britannia (C. C. A.) 252 F. 583, for the proposition that, assuming initial negligence on the part of the respondent, it was wrong of the captain of the Margaret H not to make every effort to protect his boat. Undoubtedly that duty rested on the Margaret H. It could not stand idly by, even after the performance of a negligent act by the respondent, and make no effort to guard against possible danger. Respondent urges that it was feasible for the captain of the Margaret H to have pulled in the lines to Thompson's digger to draw himself alongside. If this could have been done without imperiling the digger, undoubtedly that obligation lay on the Margaret H, but the digger was not alongside a pier or wall, but, on the contrary, in the immediate vicinity of the cribbing, and it could easily have been perilous for the Margaret H to have attempted to pull alongside. Any shifting of the digger might have imperiled the digger with resulting liability to the Margaret H and its owner.

The situation as described in the record offered no other opportunity for the Margaret H to extricate herself from the dilemma into which she had been placed by the casting of her line from the P. R. R. No. 510.

In consequence, the P. R. R. No. 510 and the Pennsylvania Railroad Company must be held responsible. The libel will be dismissed against the steamtug Harrisburg.

There was conflicting evidence offered by the two surveyors in respect to the condition of the Margaret H as shown at the time of the survey. The respondent's witnesses contended that the evidence of broken knees and king posts indicated an old condition and was not the result of any recent accident. On the other hand, the libelant's witness testified that on November 30th he had been on board the Margaret H, and there was no evidence of broken knees or king posts, and that moreover, had there been such broken knees and king posts, the Margaret H could not have carried the heavy loads that she had been carrying for months prior to the accident; as such defective knees and king posts would have rendered her unseaworthy. Lending color, perhaps, to this view, that the damaged parts indicated a recent injury, was the description by the respondent's expert. He said that these knees and king posts were scattered about the Margaret H. It is hard to believe that such would be the fact unless the damage had been the result of a recent occurrence.

Libelant may have a decree.

Settle decree on notice.